**TIGER FLATS PRODUCTION COMPANY, INC., an Oklahoma Corporation, Appellees,**

v.

**OKLAHOMA PETROLEUM EXTRACTING CO., a Delaware Corporation, Sanford R. Stallard, and William R. Walker, As Trustee of the William R. Walker Trust under Agreement dated April 25, 1975, Appellants.**

**No. 61850.**

Supreme Court of Oklahoma.

Dec. 17, 1985.

---

**15.** See footnote 2(a) *supra.*

James W. George & Associates by Paul DeGraffenreid, Oklahoma City, for appellants.

Rainey, Barksdale & Barksdale by Bill Barksdale, Okmulgee, for appellees.

DOOLIN, Vice Chief Justice.

This case calls upon us to determine, as a matter of first impression, whether a party to a foreclosure suit who is a working interest owner of oil and gas rights may be held personally liable in a deficiency judgment in the event that the amount derived from the value of foreclosure of lien on the leasehold interest is insufficient to pay the claim. We hold that where a lessee is primarily chargeable with a debt, a personal deficiency judgment is authorized, unless an exception is distinctly expressed by statute. Since the underlying facts are important to the resolution of this dispute, we set them forth in some detail.

### I.

Appellee/plaintiff Tiger Flats Production Company (Tiger) is the unit operator of a tract of land, which is portion of the Tiger Flats Dutcher Sand Unit (Dutcher Unit) in Okmulgee County, Oklahoma. The Dutcher Unit was originally created, at the request of appellants/defendants Oklahoma Petroleum Extracting Company (OPEC), Sanford R. Stallard, and William R. Walker, (referred to collectively as OPEC Group or appellants), by the Oklahoma Corporation Commission under Authority of Title 52 O.S. (1981) § 287.1 et seq. Stallard, as president of OPEC, and Walker, who owns one-half interest in OPEC, drafted the Plan of Unitization, and made out-of-pocket expenditures in the planning and creation of the Dutcher Unit. Thereafter, Tiger was designated unit operator by the Corporation Commission.

Tiger expended money for drilling operations and development of the Dutcher Unit in accordance with the Plan of Unitization. In August, 1981, all working interest owners, except the OPEC Group, had paid their proportionate share of the unit expenses for the Dutcher Unit. During that same time period, the OPEC Group was attempting to negotiate its claim for pre-unitization expenditures. OPEC Group did not commence any legal action against Tiger for its pre-unitization expenditures. However, Tiger filed an action for a personal money judgment and foreclosure of lien against the OPEC Group's interest in the leasehold estate.

OPEC Group counterclaimed, alleging Tiger had violated its fiduciary trust by failing to perform as unit operator in a prudent and workmanlike manner, and also sought judgment in amount of its proportionate share of unit expenses by the value of their pre-unitization costs. The district court severed OPEC Group's counterclaim, both parties waived jury trial, and Tiger's action was tried to the court in equity.

Upon motions by both parties for summary judgment, the district court overruled both motions, and made a separate finding:

> That as a matter of law if (Tiger) is awarded judgment against any or all the (Appellants), such judgment will be *personal* against the (Appellants), *but (Tiger) must resort for payment first to the property upon which the subject liens have been filed, and then upon the (OPEC Group) personally for any deficiency.* (Emphasis added).

OPEC Group then filed a petition for certiorari to appeal the Interlocutory Order as inconsistent with the remedy provided by the Plan of Unitization at §§ 18.5 and 18.6, and in violation of Title 52 O.S. (1981),

§ 287.8. We denied certiorari to review this interlocutory matter on July 18, 1983.

The District Court granted Tiger a personal deficiency judgment and foreclosure of lien against the interest of each individual appellant. (Members of OPEC group) Tiger was also awarded joint and several attorney fees and court costs against the OPEC Group, the only defendants. To dispose of all pending issues and allow this appeal to proceed from a final judgment, OPEC Group dismissed with prejudice its counterclaim and affirmative defenses.

## II.

■ OPEC Group asserts that the trial court erred in rejecting its claim that Tiger's expenditures in excess of $10,000.00 were not authorized by the Plan of Unitization and therefore not owed by the OPEC Group. We find no merit in this contention. As we stated in *Wetsel v. Independent School District District I–1*, 670 P.2d 986, 992 (Okl.1983), when a claim of error is merely alluded to in the brief, it will not be considered on appeal. Since neither citation nor authority is offered in support of this alleged error, the same will be treated as waived. *Ellis v. Race*, 398 P.2d 805, 810 (Okl.1965). Appellants' appropriate forum for just adjudication of this proposition lay in their counterclaim, which appellants dismissed with prejudice.

■ We agree with the OPEC Group's second contention that under no circumstances may an owner of oil and gas rights be chargeable for more than the amount apportioned to his interest in the unit. 52 O.S. (1981) § 287.8. The record before us shows Tiger did not seek payment from appellants in excess of their respective fractional interest in the unit.

## III.

■ We now approach the core of this dispute, which appears to be one of first impression. OPEC Group's third contention is that § 287.8 precludes personal judgment against a lessee in excess of its interest in the unit and that Articles 18.5

and 18.6 of the Plan of Unitization limits the liability of the unpaid lessee to his ownership in the unit. Section 287.8 provides in pertinent part:

> The obligation or liability of the lessee or other owners of the oil and gas rights in the several separately-owned tracts for the payment of unit expense shall at all times be several and not joint or collective and in no event shall a lessee or other owner of the oil and gas rights in the separately-owned tract be chargeable with, obligated or liable, directly or indirectly, for more than the amount apportioned, assessed or otherwise charged to his interest in such separately-owned tract pursuant to the plan of unitization and then *only to the extent of the lien provided for in this Act.* (Emphasis by Appellant).

Article 18.5 of the Plan of Unitization provides that:

> Any such defaulting lessee shall not be entitled to participate in the proceeds of Unitized substances until such amount (unpaid unit expenses) so carried (Paid by the unit operators or all non-defaulting lesses) have been recovered with interest thereon at twelve (12%) percent per annum from the income attributable to such defaulting lessee after first deducting Unit Expenses therefrom.

That Article further provides that the amount shall be payable first, from *the lessees primarily chargeable therewith;* second, out of the proceeds from the defaulting lessee's share of Unitized Substances; third, from any overriding royalty interests, oil and gas payments, or other interests in excess of a one-eighth basic royalty interest to which the defaulting lessee's interest is subject; fourth from the purchaser the proceeds from such lessee's share of Unitized substances, and fifth, from the sale or other disposal of Unit equipment.

Article 18.6 grants the unit operator a first and prior lien against any defaulting lessee's interest and states "(t)he lien may be foreclosed at any time in the manner provided for by Law." Appellants then

assert there is no other method (e.g. deficiency judgment) for collecting unpaid sums available to the operator under the Plan of Unitization. We disagree.

Section 287.8 and the Plan of Unitization are silent on the right of Tiger to recover a deficiency judgment from the appellants for failure to pay their proportionate share of unit expenses. No waiver or exclusion of that right can be inferred, for as this Court stated in *Fenton v. Young Chevrolet Co.*, 191 Okl. 161, 127 P.2d 813, 814 (1942):

> A party has a right to sue on any cause of action which he holds (including the right to seek a deficiency judgment) and any statutory exception to that right must be distinctly expressed. (parenthetical phrase added).

Since the unit expenses, primarily chargeable to OPEC Group, are the foundation of Tiger's right to foreclose the lien in equity, the trial court had jurisdiction to administer complete relief between the parties, *Watkins v. McComber, infra.* On appeal, such judgment will not be set aside unless there is no competent evidence reasonably tending to support the judgment rendered by the trial court. *Jones v. Novotny*, 352 P.2d 905 (Okl.1960); *Watkins v. McComber*, 208 Okl. 352, 256 P.2d 158 (1953); *Leveridge v. Notaras*, 433 P.2d 935 (Okl.1967); *American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592 (Okl.1981).

The undisputed evidence shows that Tiger pleaded and established a valid and subsisting debt against each individual appellant. *Hedlund v. Brogan*, 167 Okl. 393, 30 P.2d 164 (1934); *Reeves v. Jenkins*, 439 P.2d 941 (Okl.1968). In view of the fact the OPEC Group admitted it never intended to pay its share of unit expenses, and never attempted to remove themselves from unit participation, we cannot say the trial court abused its discretion. Nor can we accept OPEC Group's contention that its failure to pay unit expenses upon its members' respective interest does not entitle the unit operator and the non-defaulting lessees to relief in the form of a deficiency judgment.

The Plan of Unitization expressly creates and impliedly provides the lien may be foreclosed at any time in the same manner and with the same effect as mechanics' liens. *Fenton*, supra. In a foreclosure suit, the trial court may order a deficiency judgment upon notice to the party against whom such judgment is sought. 12 O.S. (1981) § 686. The trial court had jurisdiction to render its decision for a personal deficiency judgment and for foreclosure of the lien interest described in Tiger's petition.

AFFIRMED.

All Justices concur.